LEWELLEN *v.* WILLIAM T. COLLINS SHOWS.

5-3075 371 S. W. 2d 833

Opinion delivered November 4, 1963.

*Wade & McAllister,* for appellant.

*Greenhaw & Greenhaw,* for appellee.

CARLETON·HARRIS, Chief Justice. This is a Workmen's Compensation case, which involves a carnival worker. Rufus V. Lewellen, alias Ernest Welch, was given employment on September 2, 1961, at Lincoln, Nebraska, by Glen Joplin, general manager of appellee, William T. Collins Shows. He was assigned by Joplin to work on the "scrambler ride." The carnival, from Lincoln, moved to Fayetteville, Arkansas, for its next showing, to be held at the fairgrounds. Lewellen arrived in Fayetteville on Saturday, September 9, in the late afternoon, and was injured some time between 11:00 p.m. and early Sunday morning, September 10. Claimant contended that he was injured while in the course of his employment, and was entitled to compensation. The claim was controverted and, though allowed by the referee, was disallowed by the full commission, which found that claimant had failed to establish that his injury arose out of and in the course of his employment. On appeal to the Washington County Circuit Court, the Commission was affirmed, and appellant has appealed to this court.

No intricate questions of law are involved in this appeal, and we are only concerned with whether the finding of the commission was supported by substantial evidence.

Lewellen testified that before leaving Lincoln on Friday morning, Joplin saw a mattress lying on the ground and told claimant to pick it up and put it in a particular truck, carrying other carnival equipment, and upon arriving in Fayetteville, to take the mattress out of the truck and put it under Joplin's house trailer. He traveled to Fayetteville "on his own," riding part of the way with a man called "Slim," who did not work for the carnival; "I think he worked for someone that has a tent there." After arriving in Fayetteville, he helped put up the "cook tent" (not owned by the carnival, but privately operated). Lewellen said that he saw Joplin, who told him to get the mattress and "put it under my tent, in my trailer." According to claimant, he did not perform this task right then, but ate supper before 10:00 o'clock at Byrd's Diner, stood around for a while and then decided to "turn in." He then went to the truck to get the mattress for Joplin, endeavored to pull it out of the truck, but his foot slipped, and he fell, severely injuring his shoulder.[1]

"Well, when I come to I was laying, kind of sticking up in the air, and I was down there—oh, my face was down there on the ground, and it seemed like a bright light off and on. All of a sudden the ride we'd been working on, Scrambler, I could see that just whirling around and round, seemed like there was little girls, little kids was swinging way off, and I was—I went to jump up, I went to raise up and I fell back. Then I went to begging for help, crying, screaming."

The witness estimated that it was close to midnight when he fell.

Gordon McNeese testified that he was an employee of Leonard Guest at the "cook" tent, but was not an employee of William T. Collins Shows; that Lewellen volunteered to help put up the "cook house" tent, and worked for about an hour and a half, but was not paid for such work.

[1] Dr. Coy C. Kaylor testified that Lewellen "had a collapsed lung on the right, and an acromioclavicular separation, fracture of the twelfth dorsal vertebra."

James Edward Dykes, an employee of the Collins shows, testified that he saw Lewellen early Saturday night, and that claimant had been drinking; that he saw him again around midnight and Lewellen was drunk. The witness then stated that he went to sleep (in a bed which he set up by the side of his truck) between 12:30 and 1:00 in the morning, and was awakened by someone "moaning that they'd hurt their arm and their back; they'd fell out of the truck. And I was tired and sleepy; I just told them to shut up and go on to sleep." Dykes said that the next morning he saw Lewellen at the "cook house" and the latter told him "that he was asleep; he was having a dream that some small kids was going to get on one of the rides; and he was getting off to put them on; and he fell out of the truck."

Glenn Joplin, general manager of William T. Collins Shows, testified that after he had assigned Lewellen to the "Scrambler Ride,"[2] no other duties or additional work was given claimant. He stated that before he left Lincoln, he instructed all employees of the carnival, who were not truck drivers, to report at 8:00 o'clock on Sunday morning in Fayetteville; that from the time of leaving Lincoln on Friday morning until Sunday morning at 8:00, there were no duties whatsoever for Lewellen to perform. Joplin testified that he saw claimant at his (Joplin's) trailer on Saturday between 6:00 and 7:00 P.M., when claimant came to him, wanting money. He stated that Lewellen was not on duty, and would have been "fired" if on duty, since he could smell liquor on Lewellen at that time. He denied telling claimant to get a mattress, or, in fact, directing Lewellen to do anything from the time he left Lincoln. The witness stated that Sunday morning about 8:00 o'clock, "he told me that he had been dreaming the night before and had dreamed about getting up, and walking out of the truck; he walked out, and he hurt hisself and wanted to know then if there was any way that I could work it in on the insurance to take him to the hospital. And I told him at that time that I had no insurance to cover him while he was off duty,

---

[2] The duties of Lewellen here consisted of helping people on and off the ride, and helping to tear down and set up the ride.

but if he wanted to go to the hospital my nephew was fixing to go to town, and if he wanted to go to the hospital I would let my nephew take him up there, which he did.''

Joplin testified that the transportation of the carnival employees, except truck drivers, was their own ''worry;'' further, that he had no connection with the ''cook house,'' which was operated entirely by Leonard Guest; that Lewellen had no business on the truck from which claimant told the superintendent that he had fallen.[3]

Robert Callan testified that he took Lewellen to the hospital, and that on the trip, he asked claimant how he was injured, and ''he said he was sleeping at the back of the truck and had become excited and fell out.''

As stated at the outset, the sole question before this court is whether there was substantial evidence to support the finding of the commission. It is readily apparent that such evidence existed. For instance,

1. Joplin denied that he told the appellant to get the mattress off the truck.

2. Joplin testified that there were no duties for appellant to perform from Friday morning, September 8, until 8:00 o'clock Sunday morning, September 10.

3. Dykes testified that appellant stated that he fell out of the truck in his sleep.

4. Callan stated that appellant told him that he had been sleeping in the back of the truck, had been drinking, and apparently became excited and fell out.[4]

The commission's finding that appellant's injury did not occur during the course of his employment was supported by the evidence offered by appellees, which the commission had a right to believe.

Affirmed.

---

[3] This truck contained floorings for Dodger (small cars), one of the rides of the carnival, with which Lewellen had no connection nor duties.

[4] The commission did not find that Lewellen was intoxicated.